UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALEJANDRO PERALTA ACUAPAN,

                Petitioner,

                - against-

PAMELA BONDI, *in her official capacity as
U.S. Attorney General*; KRISTI NOEM, *in her
official capacity as Secretary of the U.S. Department
of Homeland Security*; RAUL MALDONADO, JR.,
*in his official capacity as Warden of the Metropolitan
Detention Center*; TODD LYONS *in his* official *capacity
as Acting Director of U.S. Immigration and Customs
Enforcement*; and JUDITH ALMODAVAR, *in her official
capacity as Acting Field Office Director of the New York
Office of U.S. Immigration and Customs Enforcement*,

                Respondents.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-00384 (OEM)

ORELIA E. MERCHANT, United States District Judge:

      Petitioner Alejandro Peralta Acuapan ("Petitioner") seeks a writ of habeas corpus for immediate release pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE") as a violation of due process under the U.S. Constitution. *See* Petition for Writ of Habeas Corpus, Dkt. 1 (the "Petition" or "Pet."). Petitioner was arrested by ICE on November 19, 2025, in Brooklyn, New York, and he is currently detained at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brookyln"). For the following reasons, the Petition is granted.

## BACKGROUND

      Petitioner is a native and citizen of Mexico. *See* Pet. ¶ 11; Declaration of Deportation Officer Kerryn Irving ¶ 6, Dkt. 7-1 ("Irving Decl."). He first entered the United States without inspection near Calexico, California, on June 24, 1999. Irving Decl. ¶ 3. He was encountered by

United States Customs and Border Patrol and granted voluntary return to Mexico that same day. *Id.* Petitioner re-entered the United States at an unknown location on an unknown date sometime later that year. *Id.*; Pet. ¶ 25.

On November 19, 2025, ICE officers, in conjunction with other federal law enforcement officers, were conducting an enforcement action in Brooklyn, New York, against another individual. Irving Decl. ¶ 4. While outside the target's last known residence, the officers observed Petitioner, an individual matching the target's description, exit the residence. *Id.* The officers subsequently approached Petitioner for questioning, and Petitioner admitted that he was born in Mexico and lacked documents permitting his entry or presence in the United States. *Id.* ¶ 6. After confirming Petitioner's statements with a records check, the officers arrested Petitioner pursuant to a Form I-200 Warrant for Arrest of Alien. *Id.* ¶¶ 6-7.

The same day, ICE issued and served Petitioner with a Form I-862 Notice to Appear ("NTA") before an Immigration Judge ("IJ"), placing him in removal proceedings under 8 U.S.C. § 1229(a). Irving Decl. ¶ 8. The NTA charged Petitioner with being removable as "[a]n alien present in the United States without being admitted or paroled, or who arrive[d] in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i).

On November 20, 2025, ICE transferred Petitioner to MDC Brooklyn, where he has remained since. Irving Decl. ¶ 10.

On December 8, 2025, Petitioner requested a bond hearing under 8 C.F.R. § 1236.1 *Id.* ¶ 16. Petitioner argued that he was a member of the class certified in *Maldonado Bautista v. Santacruz*, 5:25-cv-1873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025), and that the declaratory relief in *Maldonado Bautista* entitled him to a bond hearing under 8 U.S.C.

§ 1226(a). Irving Decl. ¶ 16. The IJ denied Petitioner's bond request for lack of jurisdiction on December 15, 2025. *Id.* ¶ 17.

Later in December 2025, the *Maldonado Bautista* court entered a final judgment of declaratory relief that class members "are detained under 8 U.S.C. § 1226(a) . . . and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." *See Maldonado Bautista v. Noem*, 5:25-cv-01873-SSS-BFM, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). In light of this final judgment, Petitioner once again sought bond. *See* Irving Decl. ¶ 18; Opp'n at 9. At a second bond hearing on December 30, 2025, the IJ found that the court had jurisdiction to conduct a custody determination and granted Petitioner release on bond of $7,000. Pet. ¶ 30.

The Department of Homeland Security subsequently appealed the IJ's bond decision to the Board of Immigration Appeals (the "BIA") and requested a discretionary stay, which the BIA granted. *Id.* ¶ 31. As a result, Petitioner remains in detention, even after paying his bond. *Id.*

To the Court's knowledge, the bond appeal remains pending as of the date of this Memorandum and Order.

## PROCEDURAL HISTORY

On January 22, 2026, Petitioner commenced this action by filing a petition for a writ of habeas corpus. *See generally* Pet. That same day, the Court issued an order to show cause why the Petition should not be granted, thereby directing Respondents Pamela Bondi, Kristi Noem, Raul Maldonado, Todd Lyons, and Judith Almodovar ("Respondents") to file a return by January 27, 2026; ordering the parties to appear before the Court for a hearing on January 29, 2026; and ordering that Respondents not remove Petitioner from this District "until further order of this Court." *See* Order to Show Cause, Dkt. 3 (the "Order to Show Cause").

Respondents filed a motion for an extension of time to file a response to the Petition, *see* Letter from Respondents to the Court (Jan. 25, 2026), Dkt. 5, which the Court granted on January 26, 2026. In granting the extension, the Court also rescheduled the hearing to February 5, 2026, at 11:00 a.m. *See* Order, dated Jan. 26, 2026.

Respondents filed their response on January 30, 2026. *See* Memorandum of Law in Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Issued, Dkt. 7 (the "Opposition" or "Opp'n"). On February 4, 2026, Respondents filed a letter appending four supplemental authorities supporting their position. *See* Letter from Respondents to the Court, (Feb. 4, 2026), Dkt. 8.

The Court held a hearing on the Order to Show Cause on February 5, 2026, at 11:00 a.m. *See generally* Transcript of Civil Cause for Order to Show Cause Before the Honorable Orelia E. Merchant United States District Judge (the "Transcript" or "Tr.").

Respondents filed two more letters appending supplemental authorities in support of their position on February 8 and 11, 2026. *See* Letter from Respondents to the Court (Feb. 8, 2026), Dkt. 9; Letter from Respondents to the Court (Feb. 11, 2026), Dkt. 10.

## DISCUSSION

The instant Petition raises three principal issues: (1) whether Petitioner has exhausted administrative remedies; (2) whether Petitioner is detained under 8 U.S.C. § 1226 ("Section 1226" or "§ 1226") or 8 U.S.C. § 1225 ("Section 1225" or "§ 1225"); and (3) whether Petitioner's due process rights have been violated.

### A. Administrative Exhaustion

Although Respondents do not address administrative exhaustion in their Opposition, they argued at the Hearing that more administrative process is available to Petitioner such that his

requested relief is premature. *See* Tr. Petitioner contends that exhausting administrative remedies would be futile. Pet. ¶ 20.

Courts generally require "administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus." *Quintanilla v. Decker*, 21-CV-417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (citing *Joseph v. Decker*, 18-CV-2640 (RA), 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)). However, exhaustion is a "prudential matter," not a "statutory requirement." *Id.* Indeed, courts in this Circuit have excused exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

Here, an IJ granted Petitioner release on bond, but the BIA stayed his release pending appeal of the bond decision. Pet. ¶ 31. The Court recognizes that Petitioner is not foreclosed from arguing in favor of the IJ's bond decision before the BIA and that the BIA is free to overturn its prior decisions regarding the relevant detention authority. But there are no administrative remedies available to Petitioner to address the alleged injury: his initial detention by ICE without an individualized determination that he posed a flight risk or danger to the community. *See* Pet. ¶¶ 60-61. While Petitioner was granted a bond hearing in accordance with § 1226(a), "the implementing regulations provide that '[s]uch hearings . . . are provided for the purpose of custody re-determination—a hearing held by an immigration judge after ICE makes its initial decision to detain.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (quoting *Chipantiza-Sisalema v. Francis*, 25 Civ. 5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025)); *see also* 8 C.F.R. § 236.1(d)(1). As this Court has held previously, post-deprivation review in the form

5

of a bond hearing is inadequate to remedy a detention that is unlawful from its inception. *See J.U. v. Maldonado*, 805 F. Supp. 3d 482, 490 (E.D.N.Y. 2025); *Artiga v. Genalo*, 25-CV-5208 (OEM), 2025 WL 2829434, at *4 (E.D.N.Y. Oct. 5, 2025); *see also Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (stating that a bond hearing "is no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." (quoting *Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *15 (S.D.N.Y. June 12, 2018)). Accordingly, Petitioner is excused from exhausting administrative remedies before seeking relief in this Court.

### B. Statutory Basis for Petitioner's Detention

As for the core issue of this case, whether Petitioner is detained pursuant to § 1226 or § 1225, the Court is bound by a long line of U.S. Supreme Court precedent. *See Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (stating that § 1225(b) governs "aliens seeking admission into the country," whereas § 1226(a) governs "aliens already in the country" who are subject to removal proceedings). Thus, the Court's position on whether § 1226 or § 1225 applies in scenarios where a petitioner is detained after entering the country has not changed since deciding other 28 U.S.C. § 2241 immigration cases recently. *See, e.g., J.U.*, 805 F. Supp. 3d 482; *Artiga*, 2025 WL 2829434; *Lira Caceres v. Shanahan*, 26-CV-00016 (OEM), 2026 WL 233215 (E.D.N.Y. Jan. 28, 2026); *Singh v. Maldonado*,

26-CV-00019 (OEM), 2026 WL 233216 (E.D.N.Y. Jan. 29, 2026); *Sanchez Atz v. Noem*, 26-CV-00214 (OEM), 2026 WL 320238 (E.D.N.Y. Feb. 6, 2026).

Petitioner's past entry and voluntary return do not change the conclusion that § 1226 is the applicable statute. Petitioner has nonetheless "effected an entry" into the United States following his voluntary return to Mexico on June 24, 1999, *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (quoting *Zadvydas* 533 U.S. at 693), and therefore was "already in the country" when he was arrested on November 19, 2025, *see Jennings*, 583 U.S. at 289; *Sanchez Atz*, 2026 WL 320238, at *3 (finding that the petitioner had effected an entry despite an earlier removal pursuant to 42 U.S.C. § 265, a public health statue). The fact that Petitioner did not have contact with immigration authorities upon re-entry similarly has no bearing on the statutory basis for his detention, as courts have consistently held that noncitizens who enter without such contact are still subject to § 1226. *See, e.g.*, *R.P.L. v. Maldonado*, 25-CV-6886 (HG), 2025 WL 3731864, at *1-2 (E.D.N.Y. Dec. 26, 2025); *Cuy Comes v. DeLeon*, 25 Civ. 9283 (AT), 2025 WL 3206491, at *1-4 (S.D.N.Y. Nov. 14, 2025); *Campos v. DeLeon*, 25-cv-10099 (LJL), 2025 WL 3514120, at *1-2 (S.D.N.Y. Dec. 8, 2025); *Rocano Buestan v. McShane*, 25-CV-8544 (JGLC), 2025 WL 3496361, at *1-4 (S.D.N.Y. Dec. 5, 2025).

The Court acknowledges the supplemental authorities submitted by Respondents, all of which are nonbinding on this Court. *See Buenrostro-Mendez v. Bondi*, 25-20496 & 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026); *Saamishvili v. Flanagan*, 25-cv-6178 (BMC), 2026 WL 377574 (E.D.N.Y. Feb. 11, 2016); *Arana v. Arteta*, 26-cv-240 (GHW), 2026 WL 279786 (S.D.N.Y. Feb. 3, 2026); *Acosta v. Arteta*, 25-cv-9916 (MKV), 2026 WL 263470 (S.D.N.Y. Feb. 2, 2026); *Lopez v. Noem*, 26 Civ. 00345 (JHR), 2026 WL 266597 (S.D.N.Y. Feb. 2, 2026); *Quintero v. Francis*, 25-CV-10107 (MKV), 2026 WL 265921 (S.D.N.Y. Feb. 2, 2026). While the Fifth Circuit

adopted Respondent's position in *Buenrostro-Mendez*, the majority's reasoning is not persuasive. As noted by Judge Douglas in dissent, the notion that there is no meaningful difference between an "applicant for admission" and "an alien seeking admission" in § 1225 is not "consistent with the statutory definition of 'admission,' the provision's context, the Supreme Court's understanding of the statutory scheme, and the whole history of American immigration law." *Buenrostro-Mendez*, 2026 WL 323330, at *11 (Douglas, J., dissenting). This reading of the statute "would mean that, for purposes of immigration detention, the border is now everywhere. That is not the law Congress passed, and if it had, it would have spoken much more clearly." *Id.* at *18 (Douglas, J., dissenting).

The Court also respectfully disagrees with *Saamishvili*, which is, to the Court's knowledge, the only decision in this District that has adopted Respondents' position on the scope of § 1225. *Saamishvili* does not reconcile the "whirlpool of statutory confusion" created by Respondents' interpretation, which "renders 'an alien seeking admission' needless surplusage, and makes several provisions of § 1226 surplusage as well." *Buenrostro Mendez*, 2026 WL 323330, at *12 (Douglas, J., dissenting); *see also J.U.*, 805 F. Supp. at 495 (discussing the statutory surplusage created by the government's interpretation of § 1225). *Saamishvili* also does not address the prior practice of detaining noncitizens apprehended within this country under § 1226, a practice that was unbroken for nearly 30 years and stems from a much broader historical context. *See Buenrostro-Mendez*, 2026 WL 323330, at *15 (Douglas, J., dissenting).

As the Court is not persuaded by the supplemental authorities provided by Respondents, and there are no distinguishing facts as to Petitioner in this case, this Court joins the overwhelming majority of courts to find that detention of the nature at issue here cannot be upheld under § 1225. *See Barco Mercado v. Francis*, 25-cv-6582 (LAK), 2025 WL 3295903, at *4 n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases). Mandatory detention under § 1225 is inapplicable to Petitioner, and

he is therefore subject to discretionary detention under § 1226. *See J.U.*, 805 F. Supp. 3d, at 490 (noting the mutual exclusivity of § 1225 and § 1226).

## C. Due Process

The Court now turns to whether ICE's detention of Petitioner violates his due process rights. The Fifth Amendment's Due Process Clause prevents the government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Valdez v. Joyce*, 803 F. Supp. 3d 213, 217 (S.D.N.Y. 2025) ("Even noncitizens have a liberty interest in continued freedom from civil immigration confinement." (citing *Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018))); *Lopez*, 2018 WL 2932726, at *12 ("Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.")).[1]

---

[1] Respondents argue that Petitioner's detention comports with due process because he is "treated for constitutional purposes as if stopped at the border." Opp'n at 22. However, this "entry fiction" doctrine, *id.* at 22 n.10, is neither relevant to the statutory analysis set out above nor applicable to the due process analysis. As other courts in this Circuit have explained, the entry fiction doctrine "dictates what *constitutional* rights are due to a noncitizen who is physically present in the United States (for example, because of detention or parole) but hasn't been lawfully admitted." *J.G.O. v. Francis*, 25-CV-7233 (AS), 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025). Whatever procedure Congress authorized is, under this doctrine, due process. *Id.* Here, however, the question is what process Congress authorized, so "even assuming that the entry fiction would apply," it does not affect the "*statutory* analysis." *Id.*

The Second Circuit has held that the *Mathews v. Eldridge*, 424 U.S. 319 (1976), three-factor balancing test applies when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Petitioner argues that ICE failed to exercise the discretion required by § 1226 when detaining him. Pet. ¶ 60. Petitioner's liberty interest is clearly established. *See Valdez*, 803 F. Supp. 3d, at 218.

With respect to the second prong of the *Mathews* test, the record demonstrates that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner on November 19, 2025. Respondents present no articulable facts as to why Petitioner is a dangerous or a flight risk. *See* Irving Decl. ¶¶ 6-9. Rather, Respondents argue Petitioner's arrest and detention is justified by his undocumented entry and his lack of work authorization, relying on the mandatory detention authority of § 1225. *See id.* ICE therefore did not engage in the required deliberative process during the initial decision to strip Petitioner of his liberty interest, and the risk of erroneous deprivation of that interest is high. *See Chipantiza-Sisalema*, 2025 WL

1927931, at *3; *see also Lopez*, 2018 WL 2932726, at *11 (finding a risk of erroneous deprivation where petitioner was re-detained absent a change in circumstances, procedure, or evidentiary findings).

As to the third and final *Mathews* prong, "the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Valdez*, 803 F. Supp. 3d at 218 (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690). Here, as stated above, nothing suggests that Petitioner is a flight risk or a danger to the community. Rather, Petitioner has been employed as a day laborer in construction for over 20 years, is the father of four U.S. citizens, and is the primary provider in his household. Pet. ¶ 29. Respondents have therefore failed to show a significant interest in his continued detention.

Taken together, Petitioner's ongoing detention violates his due process rights. *See Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at *15. Given the deprivation of Petitioner's liberty, the absence of any deliberative process prior to or contemporaneous with the deprivation, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy. *Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at *1.

## CONCLUSION

For the foregoing reasons, the Petition is granted. Respondents are ordered to immediately release Petitioner from custody. By February 25, 2026, Respondents shall certify compliance with this order by filing on the docket and noting specifically that Petitioner has been released.

The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED.

                                                  /s/
                                        ORELIA E. MERCHANT
                                        United States District Judge

February 24, 2026
Brooklyn, New York